# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| ELROD HOLDINGS CORP., <u>et</u> <u>al.</u>, | Case No. 06-11164 (BLS) |
| Debtors. | (Jointly Administered) |
| _____ |  |
| ELWAY COMPANY, LLP, |  |
| Plaintiff, |  |
| v. | Adversary No. 07-51719 |
| GEORGE L. MILLER In His Capacity As Trustee in Elrod Holdings Corp., <u>et</u> <u>al.</u>; JACK K. ELROD COMPANY, INC.; FIFTH THIRD BANK (OHIO); RESERVE MEZZANINE FINANCE, LLC f/k/a BRANTLEY MEZZANINE FINANCE, LLC; and WEBSTER GROWTH CAPITAL CORP., |  |
| Defendants. |  |
| GEORGE L. MILLER, in his capacity as Trustee to Elrod Holdings Corp., <u>et</u> <u>al.</u>, |  |
| Counterclaim Plaintiff, |  |
| v. |  |
| ELWAY COMPANY, LLP; JEFFREY L. ELROD; DALE K. ELROD; MARYANN WAYMIRE; MIDWEST SEATING CORPORARTION; NUSSLI, LLC; KENDALL INDUSTRIES, INC. f/k/a ELROD CORPORATION, |  |
| Counterclaim Defendants. |  |
| _____ |  |

## OPINION[1]

Before the Court are two related motions: (i) a motion to join parties to this adversary proceeding (the "Motion to Join") [Docket No. 30] filed by George L. Miller (the "Trustee") acting in his capacity as Chapter 7 Trustee, and (ii) a motion to dismiss the claims brought against the parties that the Trustee seeks to join (the "Motion to Dismiss") [Docket No. 25] filed by those parties. For the following reasons, the Court will grant the Motion to Join and deny the Motion to Dismiss as moot.

## I.   BACKGROUND

On October 16, 2006 (the "Petition Date"), Jack K. Elrod Company, Inc. ("JKE"), and Elrod Holdings Corporation ("EHC") (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code (the "Code"). The Trustee was appointed as the Chapter 7 Trustee to both Debtors' estates and, as EHC is JKE's parent company, the Court is now administering the Debtors' cases jointly.

On September 27, 2007, Elway Company, LLP ("Elway"), a purported secured creditor of JKE, commenced this adversary proceeding by filing a complaint (the "Complaint") [Docket No. 1] seeking (i) a determination of the validity, extent, and priority

---

[1]    This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2

of its liens, and (ii) allowance of its claim against the Debtors' estates in the amount of $1,639,864. Elway named the Trustee, JKE, Fifth Third Bank (Ohio) ("Fifth Third Ohio"), Reserve Mezzanine Finance, LLC, formerly known as Brantley Mezzanine Finance, LLC ("Brantley"), and Webster Growth Capital Corp. ("Webster") as defendants to the Complaint. In the Complaint, Elway alleges that, on August 18, 2006, almost two months prior to the Petition Date, it loaned JKE $1.6 million and that, to secure this loan, JKE granted Elway a continuing security interest in substantially all of JKE's assets and property. Elway argues that it now holds a properly perfected, first lien on all of JKE's pre-petition assets and the proceeds thereof as a result of its entering into subordination agreements with JKE's other secured creditors, who are Fifth Third Ohio, Brantley, and Webster.

On December 5, 2007, the Trustee filed an answer (the "Answer") [Docket No. 10] to the Complaint. The Answer included counterclaims against Elway as well as purported third-party claims against Jeffrey L. Elrod, Dale K. Elrod, Maryann Waymire (collectively, the "Elrods"), Midwest Seating Corporation ("Midwest"), NÜSSLI (US) LLC ("NUSSLI"), and Kendall Industries f/k/a Elrod Corporation ("Kendall") (collectively and including the Elrods, the "Additional Parties"). In short, the Answer alleges that, prior to the Petition Date, the Elrods engaged in a series of transactions through the manipulation of entities under their

control for the purpose of stripping assets from the Debtors for their own personal gain.

On January 28, 2008, the Additional Parties filed the Motion to Dismiss and a supporting brief (the "Brief Supporting Dismissal") [Docket No. 26]. In the Brief Supporting Dismissal, the Additional Parties assert that none of the Answer's purported third-party claims allege the Additional Defendants have derivative liability to the Trustee for the lien claimed by Elway in this adversary proceeding. The Additional Parties reason that, because Federal Rule of Bankruptcy Procedure 7014 requires such derivative liability for the bringing of third-party claims, this Court should dismiss the purported third-party claims pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

On February 11, 2008, the Trustee filed a brief (the "Brief Opposing Dismissal") [Docket No. 29] in opposition to the Motion to Dismiss. In the Brief Opposing Dismissal, the Trustee admits that the claims made in the Answer against the Additional Parties cannot properly be characterized as third-party claims. In fact, he calls any such reference inadvertent. Instead, the Trustee argues that joinder of the Additional Parties, and the claims against them, to this adversary proceeding is proper pursuant to Federal Rules of Bankruptcy Procedure 7013(h), 7018, and 7020 because the Trustee's

claims against the Additional Parties arise out of the same series of transactions and involve common questions of law and fact.

On February 14, 2008, the Trustee filed the Motion to Join the Additional Defendants and a supporting brief (the "Brief Supporting Joinder") [Docket No. 30]. In the Brief Supporting Joinder, the Trustee echoes the arguments he made in the Brief Opposing Dismissal.

On February 19, 2008, the Additional Defendants filed a reply in support of the Motion to Dismiss (the "Reply Supporting Dismissal") [Docket No. 31]. In the Reply Supporting Dismissal, the Additional Parties concede that joinder of the Elrods is proper and, in fact, that the Elrods had already answered some of the claims made by the Trustee in the Answer. Pursuant to Federal Rule of Bankruptcy Procedure 18, therefore, the Trustee could join all claims against the Elrods in this action. However, the Additional Parties argue that Federal Rule of Bankruptcy Procedure 7020 does not allow permissive joinder of Kendall, Midwest, and NUSSLI because the claims made against them do not arise out of the same series of transactions or occurrences as do the claims against Elway and the Elrods.

On February 28, 2008, the Additional Defendants then filed an objection to the Motion to Join (the "Objection to Joinder") [Docket No. 32]. In the Objection to Joinder, the Additional Defendants reiterate the arguments made in the Reply Supporting

Dismissal - namely, that permissive joinder of Kendall, Midwest, and NUSSLI is not proper.

On March 17, 2008, the Court held oral argument regarding the Trustee's Motion to Join and the Additional Parties' Motion to Dismiss.  At oral argument, the Additional Parties again conceded that the Elrods, and the claims against them, could be properly joined to this adversary proceeding.  Accordingly, on March 26, 2008, the Court entered an order [Docket No. 41] granting the Motion to Join as it relates to the Elrods.  The Court then took under advisement the Motion to Join solely as it relates to Kendall, Midwest, and NUSSLI.

The Additional Parties' Motion to Dismiss requested relief based on the fact that the Trustee failed to allege the Additional Defendants possessed derivative liability for Elway's lien claims. The additional parties reason that such an allegation was necessary to support a third-party claim.  The Trustee, however, no longer asserts that the Additional Parties are third-party defendants. Rather, the sole issue remaining after the exchange of pleadings, motions, and briefs detailed above is whether permissive joinder of Kendall, Midwest, and NUSSLI to this adversary proceeding is proper.

The matter has been fully briefed and argued.  It is ripe for decision.

## II.  **JURISDICTION AND VENUE**

The Court has Jurisdiction over this matter pursuant to 28 U.S.C. 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. 1408 and 1409.  Consideration of this matter constitutes a core proceeding under 28 U.S.C. 157 (b)(2)(A), (B), (C), (F), (H), (K) and (O).

## III.  **DISCUSSION**

### A.  **Applicable Rules of Procedure**

Federal Rules of Bankruptcy Procedure 7013, 7018, 7019, and 7020 make Federal Rules of Civil Procedure 13, 18, 19, and 20 applicable in adversary proceedings respectively.  FED. R. BANKR. P. 7013, 7018-7020.  Rule 13 governs counterclaims and provides that "Rules 19 and 20 govern the addition of a person to a counterclaim . . . ."  FED. R. CIV. P. 13(h).  "[I]f a counterclaim is properly asserted against a plaintiff, any other person can be added as a party to the counterclaim whose joinder in the original action would be authorized by Rule 20."  Dunbar & Sullivan Dredging Co. v. John R. Jurgensen Co., 44 F.R.D. 467, 473 (S.D. Ohio 1967). Because the Trustee properly brought counterclaims against Elway, he may join any other party to the extent permitted by Rule 20.

Rule 20 provides a cumulative, two-pronged test to determine whether the joinder of parties to an action is proper:

> Persons . . . may be joined in one action as defendants
> if: (A) any right to relief is asserted against them

7

> jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; <u>and</u> (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20 (emphasis added). "The purpose of Rule 20 is to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it." <u>M.K. v. Tenet</u>, 216 F.R.D. 133, 137 (D.D.C. 2002) (citing <u>Anderson v. Francis I. duPont & Co.</u>, 291 F. Supp. 705, 711 (D. Minn. 1968)). Courts should liberally construe the two requirements of Rule 20 in an effort to realize this purpose. <u>Viada v. Osaka Health Spa, Inc.</u>, 235 F.R.D. 55, 61 (S.D.N.Y. 2006).

Rule 18(a) provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims it has against an opposing party." FED. R. CIV. P. 18(a). Thus, once a party has been properly joined pursuant to Rule 20, Rule 18 permits any claimant to assert any other claim against that party. <u>See, e.g.</u>, <u>Intercon Research Assocs. v. Dresser Indus., Inc.</u>, 696 F.2d 53, 57 (7th Cir. 1982) (joinder of parties must be proper under Rule 20(a) before a claimant attempts to join claims under Rule 18(a)). In fact, "Rule 18 permits very broad joinder of claims, counterclaims, cross-claims, and third-party claims." <u>Ashe v. Swenson</u>, 397 U.S. 436, 455 (1970). Similarly to Rule 20 and other Federal Rules of Civil

Procedure, the purpose of Rule 18 is to "encourage the consolidation of related claims in a single lawsuit." Id.

## B.   **Trustee's Allegations**

As noted above, the Trustee alleges that, prior to the Petition Date, the Elrods engaged in a series of transactions through the manipulation of entities under their control for the purpose of stripping assets from the Debtors for their own personal gain. Because it bears directly upon the instant question of joinder, the Court will consider the Trustee's allegations in more detail below.[2]

The Trustee asserts that, prior to April 15, 2005, the Elrods owned and controlled JKE, Elway, and Kendall. Further, he alleges that, on April 15, 2005, the Elrods, the Debtors, Elway, and Kendall all entered into a series of transactions (collectively, the "LBO") with certain investors and lenders so that Capital Partners ("Champlain") could perform a leveraged buyout of JKE. In particular, the Trustee contends that (i) EHC and Elrod Acquisition Corporation ("EAC") were created to execute the LBO, (ii) Champlain invested $9.4 million in the LBO, (iii) Fifth Third Bank Michigan ("Fifth Third Michigan"), Fifth Third Ohio, Webster, and Brantley made term loans to EAC in a collective amount of $20.5

---

[2]     The Court notes that, while it may not continue to refer to these alleged facts as allegations in an effort to thwart redundancy, the statements made in this section are the Trustee's allegations and not the Court's findings of fact.

million, (iv) Fifth Third Michigan extended a $2.2 million line of credit, (v) the Debtors purchased assets from Kendall in the amount of $4,314,397 (the "Kendall Sale"),[3] (vi) Elway leased manufacturing and office space to JKE, and (vii) EAC merged with JKE, which survived the merger.

As a result of the LBO, the Elrods received approximately $18,189,000 in cash and $5.8 million in notes, which were subordinated to the lenders in the LBO but were secured by $5.8 million in accounts at Fifth Third Michigan.  Champlain owned seventy-six percent of EHC and the Elrods collectively owned the remaining twenty-four percent.  Two of the Elrods then continued to hold positions as directors and officers of JKE.  In addition, each member of the Elrod family entered covenants not to compete (the "Non-Compete Covenants") with JKE.

From December 2005 through March 2006, the Trustee alleges that the Elrods then caused Elway to enter into several transactions with JKE that constitute fraudulent transfers: (i) a sale-leaseback for certain computer equipment, (ii) a factoring agreement for accounts receivable on certain bonded jobs, and (iii) a sale-leaseback for certain drill line equipment.  In further support of his fraudulent transfer claims, the Trustee contends

---

[3]     The Trustee alleges that the Kendall Sale constitutes a fraudulent transfer.  In other words, he contends that the Elrods conducted a sham sale so that they could transfer cash from JKE, the entity they were about to sell, to Kendall, another entity that they owned.

that JKE failed to receive reasonably equivalent value in exchange for entering into these transactions.

On August 18, 2006, the Elrods, Elway, Champlain, Fifth Third Ohio, Fifth Third Michigan, Webster, and Brantley entered into a number of transactions (collectively, the "Restructuring") with JKE to restructure the LBO.  The Trustee asserts that, as part of the Restructuring, (i) the Elrods caused Elway to enter into a sale-leaseback for certain machinery and equipment for $4.7 million, (ii) the Elrods received $5.8 million on their notes and purportedly remained secured creditors against JKE for $2.3 million, (iii) a number of creditors reduced the Debt owed to them or converted that debt to equity, (iv) and the Elrods caused Elway to become a purported secured creditor against JKE.  In addition, the Trustee contends that neither of the purported loans or investments from the Elrods and Elway constituted infusions of new capital into JKE.  Rather, he argues that they were recycled proceeds and reclassified liabilities, which occurred as a result of the Restructuring.

During the Restructuring, the Non-Compete Covenants were specifically amended to permit the Elrods to directly or indirectly compete with JKE's business in the event of a termination and cessation of JKE's business.  In addition, the Debtors, Elway, the Elrods, Fifth Third Michigan, Fifth Third Ohio, Webster, and Brantley all entered into a mutual release agreement.

11

The Trustee then alleges that, on or about October 9, 2006, the Elrods terminated all of JKE's employees, including themselves. He asserts the Elrods thereupon formed Midwest and operated a business, which was substantially the same as that of the Debtors, out of the same manufacturing and office space as the Debtors. On August 1, 2007, the Elrods then sold Midwest, or at least a large portion of its assets, to NUSSLI and NUSSLI took over Midwest's operations. Finally, the Trustee contends that JKE was insolvent at all relevant times.

In sum, the Trustee alleges that over the course of approximately two years, the Elrods (i) sold JKE for an amount greater than the value of its shares while leveraging JKE's assets to the detriment of JKE and its creditors, (ii) benefitted from fraudulent transfers with, and fraudulent conveyances from, JKE while controlling JKE, (iii) stripped assets and opportunities from JKE by shutting JKE down and establishing Midwest, and (iv) benefitted from selling Midwest to NUSSLI. Further, they are alleged to have done this by using entities under their control - namely, Midwest, Kendall, and Elway - while JKE was insolvent. In simpler terms, the Trustee claims that the Elrods sold a company, stole the company back, and then sold it again.

**C.**  **The Events Alleged by the Trustee Constitute One Series of Transactions or Occurrences**

"[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of

claims, parties and remedies is strongly encouraged." United Mine
Workers v. Gibbs, 383 U.S 715, 724 (1966).  Consistent with this
policy, courts have held that different events may still be part of
the same series of transactions or occurrences if there is an
overarching scheme or policy behind those events.  See King v.
Ralston Purina Co., 97 F.R.D. 477 (W.D.N.C. 1983) (three plaintiffs
working in different places and different divisions of same company
could join in single suit because they alleged a companywide policy
of discrimination); see also United States v. Mississippi, 380 U.S.
128, 142 (1965) ("state-wide system" among voter registrars made
different denials of votes to citizens based on race part of the
same series and permitted registrars to be joined as defendants in
one action).  Generally, "[t]ransactions or occurrences satisfy the
series of transactions or occurrences requirement of Rule 20(a) if
there is some connection or logical relationship between the
various transactions or occurrences."  MyMail, Ltd. v. America
Online, Inc., 223 F.R.D. 455, 456 (E.D. Tex. 2004) (citing Hanley
v. First Investors Corp., 151 F.R.D. 76, 79 (E.D. Tex. 1993)).

    In this case, the Court concludes that all of the events
alleged by the Trustee constitute a single series of transactions
or occurrences as contemplated by Rule 20.  The Trustee alleges
that the Elrods either engaged in, or caused to occur, a number of
transactions with the common purpose of wrongfully stripping JKE of
its assets to the detriment of its creditors.  The events therefore

all bear a logical relationship to each other in the sense that each advances the Elrods' alleged wrongful scheme.

## D.  **Questions of Law or Fact Common to All Defendants to the Trustee's Action Will Arise**

Questions of fact common to all defendants to the Trustee's claims will arise.  The bulk of the Trustee's claims will or can involve evidence of alleged fraudulent behavior on the part of Elway and the Additional Defendants: (i) fraudulent conveyance, (ii) fraudulent transfer, and (iii) successor liability.  As the Trustee has alleged that the Elrods were in at least some control of all entities involved with the exception of NUSSLI, a common question of fact will arise as to whether the Elrods acted with fraudulent intent while engaging in these transactions.  For its part, NUSSLI is alleged to be the end acquiror of assets the Trustee alleges were wrongly removed from the estates, placing it at the last stage of the scheme alleged and described by the Trustee.

Other questions of fact will arise in regards to some, but perhaps not all, of the parties such as (i) whether and when JKE was insolvent, (ii) whether reasonably equivalent value was exchanged for certain goods, (iii) when assets were transferred, and (iv) who owned and controlled what entities and when.  To avoid the multiplicative presentation of evidence by the parties before

the Court, the Court should determine these facts in one proceeding.

**E.**   **Consolidation of Cases**

The Court notes that, even if the Trustee's allegations did not constitute a series of transactions or occurrences as contemplated by Rule 20, it would likely consolidate the Trustee's claims against the Additional Parties and Elway pursuant to Federal Rule of Civil Procedure 42(a), which Federal Rule of Bankruptcy Procedure 7042(a) makes applicable to adversary proceedings. FED. R. BANKR. P. 7042(a). Rule 42(a) permits a court to consolidate multiple cases for any purpose if any cases before it involve "a common question of law or fact." FED. R. CIV. P. 42(a). As previously stated, the cases brought against the Additional Defendants involve common questions of fact. In the absence of joinder, consolidation would serve to expedite the final resolution of the disputes before the Court, thereby preventing multiple lawsuits by the Trustee, extra expense to all parties, and loss of time to the court as well as the litigants appearing before it.

**IV.**   **CONCLUSION**

For the foregoing reasons, the Court will grant the Trustee's Motion to Join and allow it to bring the asserted claims against Kendall, Midwest, and NUSSLI in this adversary proceeding. In addition, because the Additional Defendants will not be joined as third-party defendants but rather as defendants to the Trustee's

15

action, the Additional Parties' Motion to Dismiss is denied as moot.

An appropriate Order follows.

BY THE COURT:

DATED: April 18, 2008

Brendan Linehan Shannon
United States Bankruptcy Judge

16