**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| ELROD HOLDINGS CORP., et al., | ) Case No. 06-11164 (BLS) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| ELWAY COMPANY, LLP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Adversary No. 07-51719 |
| GEORGE L. MILLER In His Capacity As Trustee in Elrod Holdings Corp., et al.; JACK K. ELROD COMPANY, INC.; FIFTH THIRD BANK (OHIO); RESERVE MEZZANINE FINANCE, LLC f/k/a BRANTLEY MEZZANINE FINANCE, LLC; and WEBSTER GROWTH CAPITAL CORP., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| GEORGE L. MILLER, in his capacity as Trustee to Elrod Holdings Corp., et al. | ) |
| | ) |
| v. | ) |
| | ) |
| ELWAY COMPANY, LLP; JEFFREY L. ELROD; DALE K. ELROD; MARYANN WAYMIRE; MIDWEST SEATING CORPORARTION; NUSSLI, LLC; KENDALL INDUSTRIES, INC. f/k/a ELROD CORPORATION | ) |

**OPINION**[1]

---

[1]  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

Before the Court is a motion (the "Motion") [Docket No. 57] by Jeffrey L. Elrod, Dale K. Elrod, Mary Ann Waymire, and Elway Company, LLP (collectively, the "Movants")[2] for judgment on the pleadings in relation to a number of claims made against them by George L. Miller (the "Trustee").  The Movants assert that the Trustee has failed to make allegations sufficient to support certain of his claims for fraudulent transfer and fraudulent conveyance as they concern particular Movants.  The Trustee denies this.  For the following reasons, the Court will grant the Motion in part and deny the Motion in part.

## I. BACKGROUND

On October 26, 2006 (the "Petition Date"), Jack K. Elrod Company, Inc. ("JKE"), and Elrod Holdings Corp. ("Elrod Holdings") (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code (the "Code").  The Trustee was subsequently appointed as the Chapter 7 trustee and the Court ordered the joint administration of the Debtors' estates.

On September 7, 2007, Elway, which the Elrods owned and which had filed a secured claim against the Debtors' estates, commenced this adversary proceeding by filing a complaint (the "Complaint") [Docket No. 1].  Elway sought (i) a determination of the validity, extent, and priority of its purported liens, and (ii) allowance of its claims against the Debtors' estates.  The Complaint named JKE,

---

[2]   The Court will hereafter refer to the Movants as "Jeff Elrod," "Dale Elrod," "Waymire," and "Elway" when discussing them individually.  Where appropriate, the Court will collectively refer to Jeff Elrod, Dale Elrod, and Waymire as the "Elrods."

2

the Trustee, and several of the Debtors' creditors as defendants.

On December 5, 2007, the Trustee filed an answer (the "Answer") [Docket No. 10] to the Complaint. In the Answer, the Trustee included twenty-one counterclaims against the Movants and several other entities. The Trustee asserted, among other things, claims against the Movants based on alleged fraudulent transfers and conveyances. On April 24, 2008, the Trustee filed an amended answer [Docket No. 47], which included amended counterclaims (the "Amended Counterclaims") that are substantially similar to the his original Counterclaims.

In broad brush, the Trustee's Amended Counterclaims allege that the Movants participated in a general scheme whereby they stripped the Debtors of assets. Specifically, the Trustee alleges that the Elrods owned JKE and sold it to Champlain Capital Partners, L.P. He asserts that, when Champlain left the Elrods in control of JKE's day-to-day operations, they used Elway to engage in self-dealing, fraudulent transactions with JKE that resulted in the depletion of JKE's assets and their own enrichment. Accordingly, the Amended Counterclaims contain a number of fraudulent transfer and conveyance claims. The ones relevant to the determination of this Motion are described below.

The Fourth Claim of the Amended Counterclaims is grounded on an alleged transaction (the "Kendall Sale"), in which "[t]he Debtors purchased certain assets from Kendall ... in the amount of $4,314,397." (Amended Counterclaims ¶20(h).) The Trustee asserts that the Movants "orchestrated, participated and/or aided and

abetted in the Kendall Sale" and that the Kendall Sale constitutes a fraudulent transfer. (Amended Counterclaims ¶¶ 54, 57.) Based on these allegations, the Trustee seeks to recover from the Movants. (Amended Counterclaims ¶ 58.)

The Fifth Claim of the Amended Counterclaims is grounded on an alleged transaction (the "Computer Sale/Leaseback"), in which the Movants "manipulated Elway to enter into a Sale/Leaseback transaction with JKE for certain computer equipment." (Amended Counterclaims ¶ 23.) The Trustee asserts that the Movants "orchestrated, participated and/or aided and abetted in the Computer Sale/Leaseback" and that the Computer Sale/Leaseback constitutes a fraudulent transfer. (Amended Counterclaims ¶¶ 60, 62.) Based on these allegations, the Trustee seeks to recover from the Movants. (Amended Counterclaims ¶ 63.)

The Sixth Claim of the Amended Counterclaims is grounded on an alleged transaction (the "Drill Line Sale/Leaseback"), in which the Movants "manipulated Elway to enter into a Sale/Leaseback for certain drill line equipment." (Amended Counterclaims ¶ 26.) The Trustee asserts that the Movants "orchestrated, participated and/or aided and abetted in the Drill Line Sale/Leaseback" and that the Drill Line Sale/Leaseback constitutes a fraudulent transfer. (Amended Counterclaims ¶¶ 65, 67.) Based on these allegations, the Trustee seeks to recover from the Movants. (Amended Counterclaims ¶ 68.)

The Seventh Claim of the Amended Counterclaims is grounded on an alleged transaction (the "ME Sale/Leaseback"), in which the

Movants "manipulated Elway to enter into a Sale/Leaseback for certain machinery and equipment for $4.7 million.[3] (Amended Counterclaims ¶ 27(a).)  The Trustee asserts that the Movants "orchestrated, participated and/or aided and abetted in the ME Sale/Leaseback" and that the ME Sale Leaseback constitutes a fraudulent transfer.  (Amended Counterclaims ¶¶ 70, 72.)  Based on these allegations, the Trustee seeks to recover from the Movants. (Amended Counterclaims ¶ 73.)

The Eighth Claim of the Amended Counterclaims is grounded on an alleged transaction (the "Factoring Transaction"), in which the Movants "manipulated Elway to enter into a factoring agreement with JKE for accounts receivable on certain bonded jobs."  (Amended Counterclaims ¶ 24.)  The Trustee asserts that the Movants "orchestrated, participated and/or aided and abetted in the Factoring Transaction" and that the Factoring Transaction constitutes a fraudulent transfer.  (Amended Counterclaims ¶¶ 75, 77.)  Based on these allegations, the Trustee seeks to recover from the Movants.  (Amended Counterclaims ¶ 78.)

The Ninth Claim of the Amended Counterclaims is grounded on an alleged transaction (the "Release"), in which "the Debtors, Elway, the Elrod Family, [and two creditors] all entered into a mutual release agreement."  (Amended Counterclaims ¶ 27(m).)  The Trustee asserts that the Movants "orchestrated, participated and/or aided

---

[3]   The Trustee never defines the term "ME Sale/Leaseback." From the substance of the pleadings, however, it is clear that the Trustee is referring to the Transaction described in paragraph 27.

and abetted in the Release" and that the Release constitutes a fraudulent conveyance. (Amended Counterclaims ¶¶ 80, 82.) Based on these allegations, the Trustee seeks to recover from the Movants. (Amended Counterclaims ¶ 83.)

The Tenth Claim of the Amended Counterclaims is grounded on an alleged transaction (the "Non-Compete Covenant Modification"), in which non-compete covenants that the Elrods had entered into upon becoming JKE's employees "were specifically amended to carve-out and enable the Elrod Family to directly or indirectly compete with the rental business of JKE in the event of termination and a cessation of JKE's business." (Amended Counterclaims ¶¶ 20(l), 27(l).) The Trustee asserts that the Movants "orchestrated, participated and/or aided and abetted in the Non-Compete Covenant Modification" and that the Non-Compete Covenant Modification constitutes a fraudulent conveyance. (Amended Counterclaims ¶¶ 85, 87.) Based on these allegations, the Trustee seeks to recover from the Movants. (Amended Counterclaims ¶¶ 88.)

The Eleventh Claim of the Amended Counterclaims is grounded on an alleged series of transactions (the "LBO Transactions"). The Trustee describes the LBO Transactions as follows:

>   a. Elrod Holding Corporation ("EHC") and Elrod Acquisition Corporation were created for the purpose of performing the LBO Transaction.
>   b. Capital Partners ("Champlain") invested approximately $9.4 million in the LBO Transaction.
>   c. Fifth Third Bank – Michigan made the following loans: (i) a term loan in the amount of $3.5 million and (ii) a line of credit for $2.2 million.

    d.    Fifth Third Bank – Ohio made a $7.5 million term loan.

    e.    Webster Capital Corporation ("Webster") and Reserve Mezzanine Finance LLC f/k/a Brantley Mezzanine Finance LLC ("Brantley" and collectively, with Webster, the "Mezzanine Lenders") made a $9.5 million term loan.

    f.    As a result of the LBO Transaction, the Elrods collectively received approximately $18.189 million in cash and $5.8 million in notes (the "Elrod Family Notes").

    g.    The Elrod Family Notes were subordinated to Fifth Third Bank and the Mezzanine Lenders, but were purportedly secured by $3.5 million cash collateral account held by Fifth Third Bank – Michigan (for the benefit of the business' bonding company, Safeco Surety) and by a $2.3 million deposit account held at Fifth Third Bank – Michigan.

    h.    The Debtors purchased certain assets from Kendall (the "Kendall Sale") in the amount of $4,314,397.

    i.    As a result of the LBO Transaction, Champlain owned 76% of the equity of EHC and the Elrods owned the remaining 24% of the shares.

    j.    EHC then had five directors, duly appointed from Champlain: . . . Jeff Elrod and Dale Elrod.

    k.    The EHC officers were as follows: Jeff Elrod, President; Dale Elrod, Vice President, Treasurer and Assistant Secretary . . . .

    l.    Each member of the Elrods entered into an employment agreement with JKE, and each such employment agreement included a covenant not to compete . . . .

    m.    Elway entered into an Amended and Restated Lease of non-residential real property with JKE for the use by JKE of its manufacturing and distribution location and office facilities at . . . Mooresville, Indiana . . . .

(Amended Counterclaims ¶ 20(a)-(m).) The Trustee asserts that the Movants "orchestrated, participated and/or aided and abetted in the LBO Transactions" and that the LBO Transactions constitute a fraudulent conveyance. (Amended Counterclaims ¶¶ 90, 92.) Based on these allegations, the Trustee seeks to recover from the Movants. (Amended Counterclaims ¶ 93.)

The Twelfth Claim of the Amended Counterclaims is grounded on an alleged series of transactions (the "Restructuring"). The Trustee describes the Restructuring Transactions as follows:

a. The Elrods directed Elway to enter into a sale/leaseback for certain machinery and equipment for $4.7 million.
b. The Elrods received $5.8 million on their notes payable.
c. The Elrods released their purported security interest on their $2.3 million seller note to pay off Fifth Third Bank - Michigan.
d. The Elrods manipulated Elway to purportedly lend/invest $1.6 million, a "direct" product of the release of the purported security interest on the remaining Elrod Notes from Fifth Third Bank.
e. Champlain made a substitute letter of credit for $3.5 million to support certain Safeco bonding requirements.
f. Fifth Third Bank - Ohio reduced its debt on its term note from $7.5 million to $3.75 million.
g. The $3.5 million note to the Elrods was paid as Fifth Third Bank - Michigan was paid off.
h. The Mezzanine Lenders reduced their $9.5 million loan by 50% and converted it to equity.
i. Champlain converted its $1.8 million loan made to JKE in January of 2006 from debt to equity.
j. The Elrods purportedly continued to be secured creditors against JKE for $2.3 million.
k. Elway purportedly became a secured creditor against JKE for a $1.6 million loan.
l. The Covenants Not to Compete were specifically amended to carve-out and to enable the Elrods to directly or indirectly compete with the rental business of JKE in the event of termination and a cessation of JKE's business . . . .
m. The Debtors, Elway, the Elrods, Fifth Third and the Mezanine Lenders all entered into a Mutual release agreement.

(Amended Counterclaims 27(a)-(m).) The Trustee asserts that the Movants "orchestrated, participated and/or aided and abetted in the Restructuring" and that the Restructuring constitutes a fraudulent

8

conveyance.  (Amended Counterclaims ¶¶ 95, 97.)  Based on these allegations, the Trustee seeks to recover from the Movants. (Amended Counterclaims ¶¶ 98.)

The Thirteenth Claim of the Amended Counterclaims is grounded on an alleged transaction (the "Real Property Lease"), in which Elway entered into an Amended and Restated Lease of non-residential real property with JKE for the use by JKE of its manufacturing and distribution location and office facilities in Mooresville, Indiana.  (Amended Counterclaims ¶ 20(m).)  The Trustee asserts that the Movants "orchestrated, participated and/or aided and abetted in the Real Property Lease, with the actual intent to hinder, delay and/or defraud the Debtors' creditors" and that the Real Property Lease constitutes fraudulent transfers.  (Amended Counterclaims ¶¶ 100, 102.)  Based on these allegations, the Trustee seeks to recover from the Movants.  (Amended Counterclaims ¶ 103.)

On May 8, 2008, the Movants filed the Motion.  In the Motion, the Movants assert that fraudulent transfer and conveyance law does not allow a trustee to recover from non-transferees.  The Movants argue further that certain Movants are named as defendants in fraudulent transfer and conveyance claims relating to transactions in which they are not alleged to be transferees.  The Movants conclude that the each Movant is entitled to judgment on the pleadings where they are not alleged to be transferees.

On June 3, 2008, the Trustee filed an objection (the "Objection") [Docket No. 70] to the Motion.  In the Objection, the

9

Trustee concedes that applicable law does not allow him to recover from non-transferees. (Objection 4-5.) He argues, however, that the Movants are either direct or indirect transferees in each of the fraudulent transfer or conveyance counts asserted by him and, to the extent the Court finds otherwise, he requests that he be allowed to amend his pleadings.

On June 10, 2008, the Movants filed a reply [Docket No. 74] to the Objection, in which they examine the allegations in the Trustee's Amended Counterclaims and restate their argument that particular Movants are not alleged to be transferees in certain transfers.

The matter has been fully briefed and is ripe for decision.

## II.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(H).

## III.  DISCUSSION

A.  Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed[,] . . . a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Rule 12(h)(2) of the Federal Rules of Civil Procedure states that a defense of failure to state a claim upon which relief can be

granted may be raised by motion for judgment on the pleadings. FED. R. CIV. P. 12(h)(2). Rule 7012(b) of the Federal Rules of Bankruptcy Procedure makes Rules 12(b) and 12(c) applicable to adversary proceedings. FED. R. BANKR. P. 7012(b). Thus, as the Movants have done in the instant matter, a defendant in an adversary proceeding may move for a judgment on the pleadings based on the defense that the plaintiff has failed to state a claim.

A defense of failure to state a claim "is designed to test the legal sufficiency of the factual allegations in the plaintiff's complaint." Miller v. McCown De Leeuw & Co., Inc. (In re The Brown Schools), 368 B.R. 394, 399 (Bankr. D. Del. 2007) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)). When evaluating whether a plaintiff has failed to state a claim, a court must accept "[a]ll well-pleaded allegations" as true and view them "in the light most favorable to the plaintiff." Id. (citing In re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F.3d 198, 205-06 (3d Cir. 2002)). It is, however, "not required to accept legal conclusions or unsupported assertions." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "The question, then, is whether 'the facts alleged in the complaint, even if true, fail to support the . . . claim.'" Kost, 1 F.3d at 183 (quoting Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988)).

B.  Evaluation of the Allegations in the Amended Counterclaims

The Trustee has asserted a right to recover from each of the four Movants on each of the previously described fraudulent transfer or conveyance claims. The Movants do not seek judgment on

11

every aspect of the claims at issue. They only seek relief on those claims that are based on the Trustee's alleged right to recover a fraudulent transfer from a non-transferee. The Trustee has acknowledged that the law does not provide him with a right to recover from Movants who are non-transferees.[4] Accordingly, the Court will parse through the allegations supporting each of the above-described claims and grant judgment on the pleadings to each Movant where that Movant is not an alleged transferee.

1.   *Fourth Claim - The Kendall Sale*

In the Fourth Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the Kendall Sale constitutes a fraudulent transfer. He names the Movants as defendants to this claim, but alleges that only Kendall received payment in exchange for the assets. As the Movants are not alleged transferees, they are entitled to judgment on the pleadings in regard to the Fourth Claim because the Trustee has failed to state a claim upon which the Court can grant relief.

2.   *Fifth Claim – The Computer Sale/Leaseback*

In the Fifth Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the Computer Sale/Leaseback constitutes a fraudulent transfer. He names the Movants as defendants to this claim, but alleges only that Elway was a transferee. As the Elrods

---

[4]   The Court notes that the majority of the courts construing the Bankruptcy Code have declined to impose fraudulent transfer liability on non-transferees. Magten Asset Management Corp. v. Paul Hastings Janofsky & Walker LLP, No. Civ.A.04-1256-JJF, 2007 WL 129003, at *2 (D. Del. Jan. 12, 2007). In addition, most courts have held that there is no accessory liability for fraudulent transfers under the Uniform Fraudulent Transfer Act. See, e.g., In re Total Containment Inc., 335 B.R. 589, 616 (Bankr. E.D. Pa. 2005); In re Parmalat Sec. Litig., 377 F. Supp. 2d 390, 416-17 (S.D.N.Y. 2005).

are not alleged transferees, they are entitled to judgment on the pleadings in regard to the Fifth Claim because the Trustee has failed to state a claim upon which the Court can grant relief.

3.   *Sixth Claim – The Drill Line Sale/Leaseback*

In the Sixth Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the Drill Line Sale/Leaseback constitutes a fraudulent transfer.  He names the Movants as defendants to this claim, but alleges only that Elway was a transferee.  As the Elrods are not alleged transferees, they are entitled to judgment on the pleadings in regard to the Sixth Claim because the Trustee has failed to state a claim upon which the Court can grant relief.

4.   *Seventh Claim – The ME Sale/Leaseback*

In the Seventh Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the ME Sale/Leaseback constitutes a fraudulent transfer.  He names the Movants as defendants to this claim, but alleges only that Elway was a transferee.  As the Elrods are not alleged transferees, they are entitled to judgment on the pleadings in regard to the Seventh Claim because the Trustee has failed to state a claim upon which the Court can grant relief.

5.   *Eighth Claim – The Factoring Transaction*

In the Eighth Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the Factoring Transaction constitutes a fraudulent transfer.  He names the Movants as defendants to this claim, but alleges only that Elway was a transferee.  As the Elrods are not alleged transferees, they are entitled to judgment on the

pleadings in regard to the Eighth Claim because the Trustee has failed to state a claim upon which the Court can grant relief.

    6.   *Ninth Claim – The Release*

In the Ninth Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the Release constitutes a fraudulent transfer. He names the Movants as defendants to this claim and he alleges that all of the Movants are transferees. As the Movants are alleged transferees, they are not entitled to judgment on the pleadings in regard to the Ninth Claim. The Trustee has stated a claim against all Movants upon which the Court may grant relief.

    7.   *Tenth Claim – Non-Compete Covenant Modification*

In the Tenth Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the Non-Compete Covenant Modification constitutes a fraudulent transfer. He names the Movants as defendants to this claim, but alleges only that the Elrods were transferees. As Elway is not an alleged transferee, it is entitled to judgment on the pleadings in regard to the Tenth Claim because the Trustee has failed to state a claim upon which the Court can grant relief.

8.  *Eleventh Claim – The LBO Transactions*

In the Eleventh Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the LBO Transactions are fraudulent transfers. The only transaction in this group in which any of the Movants is alleged to be transferees and which is not the subject of a separate claim is the Elrods' receipt of $18.189 million in cash and $5.8 million in notes. Thus, the only claim that the Trustee has stated in the Eleventh Claim is with regard to the transfer of cash and notes to the Elrods.

9.  *Twelfth Claim – The Restructuring*

In the Twelfth Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the Restructuring are fraudulent transfers. The only transactions in this group in which any of the Movants are alleged to be transferees and which are not the subject of a separate claim are (i) the payment of the $3.5 million note, and (ii) Elway's receipt of a security interest as the result of a purported $1.6 million loan. Thus, the only claim that the Trustee has stated in the Twelfth Claim is with regard to the transfer of cash to the Elrods in partial satisfaction of their notes and Elway's receipt of a security interest.

10.  *Thirteenth Claim – The Real Property Lease*

In the Thirteenth Claim of the Trustee's Amended Counterclaims, the Trustee alleges that the Real Property Lease constitutes a fraudulent transfer. He names the Movants as defendants to this claim, but alleges only that Elway was a

transferee.  As the Elrods are not alleged transferees, they are entitled to judgment on the pleadings in regard to the Thirteenth Claim because the Trustee has failed to state a claim upon which the Court can grant relief.

### IV.  **CONCLUSION**

For the foregoing reasons, the Court finds that the Trustee has failed to state a claim against particular Movants in certain of the Amended Counterclaims.  Accordingly, the Court will enter a judgment on the pleadings in favor of the Elrods on the Fourth, Fifth, Sixth, Seventh, Eighth, and Thirteenth Claims.  The Court will also enter judgment on the pleadings in favor of Elway on the Fourth, Tenth, and Eleventh Claims.

An appropriate Order follows.

By the Court,

_____

Dated: September 30, 2008        Brendan Linehan Shannon
United States Bankruptcy Judge