**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| ELROD HOLDINGS CORP., ) | Case No. 06-11164 (BLS) |
| <u>et al.</u>, ) | (Jointly Administered) |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| ELWAY COMPANY, LLP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Adversary No. 07-51719 |
| GEORGE L. MILLER In His ) | |
| Capacity As Trustee in Elrod ) | |
| Holdings Corp., <u>et al.</u>; JACK ) | |
| K. ELROD COMPANY, INC.; ) | |
| FIFTH THIRD BANK (OHIO); ) | |
| RESERVE MEZZANINE FINANCE, ) | |
| LLC f/k/a BRANTLEY MEZZANINE ) | |
| FINANCE, LLC; and WEBSTER ) | |
| GROWTH CAPITAL CORP., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| GEORGE L. MILLER, in his ) | |
| capacity as Trustee to Elrod ) | |
| Holdings Corp., <u>et al.</u> ) | |
| ) | |
| v. ) | |
| ) | |
| ELWAY COMPANY, LLP; JEFFREY ) | |
| L. ELROD; DALE K. ELROD; ) | |
| MARYANN WAYMIRE; MIDWEST ) | |
| SEATING CORPORARTION; ) | |
| NUSSLI, LLC; KENDALL ) | |
| INDUSTRIES, INC. f/k/a ELROD ) | |
| CORPORATION ) | |
| _____ ) | |

**<u>OPINION</u>**[1]

Before the Court is a motion (the "Motion") [Docket No. 58]

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

filed by several alleged transferees (the "Movants")[2] seeking partial summary judgment on two fraudulent transfer claims asserted by George L. Miller (the "Trustee"). The Movants assert that 11 U.S.C. § 546(e) operates to prevent the Trustee from avoiding the alleged transfers under 11 U.S.C. § 548(a)(1)(B). The Trustee opposes the Motion, arguing that § 546(e) does not provide a safe harbor for payments made in exchange for privately traded securities. For the following reasons, the Court concludes otherwise and will grant the Motion.

## I.  BACKGROUND

A.  Factual Background

Prior to April 2005, the Elrods owned one-hundred percent of Jack K. Elrod Company, Inc. ("JKE"). JKE was a family-owned and operated business that provided its customers with design, fabrication, installation, maintenance, and safety inspection services for spectator seating arrangements. On April 15, 2005, the Elrods reached an agreement (the "Stock Purchase Agreement") with Champlain Capital Partners, L.P. ("Champlain"), pursuant to which the Elrods would sell their entire interest in JKE to Champlain.

The relevant facts are not in dispute. On April 15, 2005, Elrod Acquisitions Corp. ("Acquisitions"), which was a wholly owned subsidiary of Elrod Holdings Corp. ("Holdings") and which Champlain

---

[2] The Movants are Jeffrey L. Elrod, Dale K. Elrod, Maryann Waymire (collectively, the "Elrods"), and Elway Company, LLP ("Elway"). Elway is a company that is owned and controlled by the Elrods.

had formed to acquire JKE, was involved in three transfers pursuant to the Stock Purchase Agreement: (I) it paid the Elrods cash totaling $18,189,923 via wire transfer (the "2005 Wire Transfer"); (ii) it issued secured notes (the "Secured Notes") totaling $5.8 million to the Elrods; and (iii) it received one-hundred percent of the Elrods' stock in JKE.  Upon the completion of this transaction, JKE became a wholly owned subsidiary of Holdings.

On August 18, 2006, JKE paid Elway $3.5 million via wire transfer (the "2006 Wire Transfer") in partial satisfaction of the Secured Notes.  Both parties acknowledge that the 2005 and 2006 Wire Transfers were made through "financial institutions" as that term is used in § 546(e).  (Objection 4 [Docket No. 71].)

On October 16, 2006 (the "Petition Date"), JKE and Holdings (collectively, the "Debtors") filed petitions for relief under Chapter 7 of the Bankruptcy Code (the "Code").  The Court subsequently ordered the consolidation and joint administration of the Debtors' cases pursuant to Federal Rule of Bankruptcy Procedure 1015 and Local Rule 1015-1.  The Trustee was appointed as the Chapter 7 trustee to the Debtors' estates.

B.   Procedural History and the Parties' Positions

On September 7, 2007, Elway commenced this adversary proceeding by filing a complaint (the "Elway Complaint") [Docket No. 1], seeking (I) a determination of the validity, extent, and priority of its liens, if any, and (ii) an allowance of its claims against the Debtors' estates.

3

On December 5, 2007, the Trustee filed an answer (the "Answer") [Docket No. 10], which included twenty-one counterclaims against Elway and other defendants, including the Elrods. Subsequently, on April 24, 2008, the Trustee filed an amended answer (the "Amended Answer") [Docket No. 47]. The Amended Answer also included twenty-one counterclaims (the "Trustee's Amended Counterclaims"), which are substantially the same as those asserted with the Answer. In the Eleventh and Twelfth Claims of the Trustee's Amended Counterclaims, the Trustee alleges, among other things, that the 2005 and 2006 Wire Transfers constitute fraudulent transfers. As such, he seeks to avoid them.

The Movants filed the Motion on May 8, 2008, requesting partial summary judgment on the Eleventh and Twelfth Claims. They argue that the Trustee may not avoid the 2005 and 2006 Wire Transfers because they constitute "settlement payments" made by or to "financial institutions" and § 546(e) of the Code specifically prohibits the avoidance of such transfers. Accordingly, they ask the Court to grant the Motion and thereby prohibit the Trustee from avoiding said transfers.

On June 3, 2008, the Trustee filed an objection (the "Objection") [Docket No. 71] in response to the Motion. In the Objection, the Trustee argues that the plain language of § 546(e) restricts its application to payments made for publicly-traded securities. He also contends that the legislative history of § 546(e) confirms that the statute was intended to apply only to

4

publicly-traded securities and that no authority binds the Court to hold otherwise.

On June 10, 2008, the Movants filed a reply [Docket No. 74], in which they assert that the Third Circuit has adopted a broad definition of the term "settlement payment" as used in § 546(e) and that this expansive definition encompasses payments made for privately-held securities.

The matter has been fully briefed and is ripe for decision.

## II. **JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(H).

## III. **DISCUSSION**

A. Summary Judgment Standard

Federal Rule of Civil Procedure 56, which Federal Rule of Bankruptcy Procedure 7056 makes applicable to adversary proceedings, provides that a court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©. The moving party bears the burden of proving that no genuine issue of material issue of fact exists. See, e.g.,

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material', and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). In addition, a court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbit, 63 F.3d 231, 236 (3d Cir. 1995).

B.   The 2005 and 2006 Wire Transfers are Settlement Payments, Not Subject to Avoidance

The Trustee seeks to avoid the 2005 and 2006 Wire Transfers pursuant to § 544 and §§ 548(a)(1)(A) and (B) of the Code.[3] The Movants oppose avoidance on the ground that the transfers are "settlement payments" made by "financial institutions" and thus excepted from avoidance by § 546(e). The Trustee does not dispute that the transfers were made by "financial institutions" within the meaning of § 546(e) or that they were made as payment for JKE's stock. Instead, he argues that the term "settlement payment" as used in § 546(e) applies only to payments for publicly traded securities, unlike those that were made in this case. The Court disagrees.

---

[3] The Trustee does not specifically state which sections of the Code he is seeking to recover under. The Court, however, infers this from the substance of his pleadings.

First, the Trustee argues that the plain language of § 546(e) restricts its application to payments with respect to publicly traded securities. Section 741(8) of the Code defines "settlement payment" to include "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or <u>any other similar payment commonly used in the securities trade</u>." 11 U.S.C. § 741(8) (emphasis added). Put simply, "a settlement payment is generally the transfer of cash or securities made to complete a securities transaction." <u>Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l Inc.)</u>, 181 F.3d 505, 515 (3d Cir. 1999). The Trustee asserts that the above-emphasized final clause of § 741(8) limits § 546(e)'s application to the public securities market.

In making this argument, the Trustee states that the generally accepted definition of "trade" is "the buying and selling or bartering of commodities" and that "trade" is synonymous with "business" or "market."  Based on this definition and these synonyms, the Trustee concludes that the phrase "securities trade" only refers to "the business of buying and selling <u>publicly-traded</u> securities."  The Court finds this leap in logic to be unconvincing, since there does exist a robust trade or market for non-publicly traded securities. Most convincingly, the fact that the Elrods were able to privately market and sell their JKE stock indicates that there does exist a "trade" or "buying and selling" of securities other than publicly traded securities.

7

Second, the Trustee argues that the legislative history of § 546(e) confirms that it was intended to apply only to publicly traded securities. Specifically, the Trustee asserts that § 546(e) was enacted to protect the carefully regulated mechanisms for clearing trades in securities in public markets. He reasons, therefore, that § 546(e) was intended to be inapplicable to payments for non-publicly traded securities where the settlement and clearance system is not implicated. The United States Court of Appeals for the Third Circuit, however, expressly rejected this argument in Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l Inc.), 181 F.3d 505 (3d Cir. 1999).

In Resorts, the court considered whether payments made pursuant to a leveraged buyout ("LBO") were "settlement payments" even though "no clearing agency was involved in [the] transfer." Id. at 515. It stated that, "[i]n the securities industry, a settlement payment is generally the transfer of cash or securities made to complete a securities transaction." Id. It then held that the term is an expansive one:

> [T]he term "settlement payment" is a broad one that includes almost all securities transactions. Including payments made during LBOs within the scope of the definition is consistent with the broad meaning . . . . A payment for shares during an LBO is obviously a common securities transaction, and we therefore hold that it is also a settlement payment for the purposes of section 546(e).

Id. at 515-16. The court therefore did not allow the Trustee to avoid the transfer at issue even though the transfer did not actually implicate a clearing agency. Id. at 516.

8

The Third Circuit's holding in Resorts is not expressly limited to publicly traded securities and is of course binding upon this Court. Moreover, the Court notes that its holding today in this matter is consistent with case law applying the decision in Resorts. See Brandt v. B.A. Capital Co., LP (In re Plassein Int'l Corp.), 366 B.R. 318, 324 (Bankr. D. Del. 2007), aff'd, 388 B.R. 46 (D. Del. 2008) ("[T]he Trustee endeavors to limit the application of Resorts to publicly traded securities. . . . The Trustee's argument, however, was expressly rejected by Resorts."); Official Comm. of Unsecured Creditors of The IT Group v. Acres of Diamonds, L.P. (In re The IT Group, Inc.), 359 B.R. 97, 101 (Bankr. D. Del. 2006) ("The Third Circuit . . . did not consider dispositive whether the sale involved the securities clearance and settlement system. Additionally, the Third Circuit did not consider a worthy distinguishing factor that the stock was sold privately rather than on the public stock market.").

D. The Trustee's Claim for Avoidance Under § 548(a)(1)(A) Survives the Motion for Partial Summary Judgment

A trustee may avoid a transfer pursuant to § 548(a)(1) if the transfer satisfies the criteria set forth in either § 548(a)(1)(A) or (B). 11 U.S.C. § 548(a)(1). Section 546(e) operates to limit a trustee's avoidance power under § 548(a)(1)(B). 11 U.S.C. § 546(e) (stating that the section applies "[n]otwithstanding sections . . . 548(a)(1)(B)"). It does not, however, limit avoidance under § 548(a)(1)(A). Id. (providing that "the trustee may not avoid a transfer . . . except under section 548(a)(1)(A) of

9

this title"). Thus, a court may not prohibit a trustee from avoiding a transfer under § 548(a)(1)(A) by finding that the circumstances of the transfer satisfy the criteria set forth in § 546(e).

In the instant case, the Trustee has alleged facts that, if true, would allow him to avoid the 2005 and 2006 Wire Transfers under both § 548(a)(1)(A) and (B). As discussed above, § 546(e) only allows the Court to grant summary judgment to the Movants with respect to the Trustee's claim for avoidance under § 548(a)(1)(B). Accordingly, the Trustee's claim for avoidance under § 548(a)(1)(A) survives the Court's ruling today.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that no material fact is in dispute and that § 546(e) protects certain transfers made to complete securities transactions regardless of whether the securities are publicly or non-publicly traded. Accordingly, the 2005 and 2006 Wire Transfers are exempt from avoidance under § 548(a)(1)(B). The Court will grant the Motion.

An appropriate Order follows.

By the Court,

_____

Dated: September 30, 2008          Brendan Linehan Shannon
                                    United States Bankruptcy Judge